b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| BEN WILLIAM MEAUX, Plaintiff | CIVIL DOCKET NO. 1:19-CV-01014 |
| VERSUS | DISTRICT JUDGE JOSEPH |
| LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

Defendants filed an unopposed Motion for Summary Judgment. ECF No. 40. Because Defendants have shown there are no genuine issues of material fact on the issue of deliberate indifference, the Motion for Summary Judgment (ECF No. 40) should be GRANTED.

I. **Background**

Plaintiff Ben Williams Meaux ("Meaux") filed complaints pursuant to 28 U.S.C. § 1983 against Defendants Shelly Desselle (mental health director and ADA site coordinator at RLCC), James LeBlanc (Secretary of the Louisiana Department of Corrections), W.S. Sandy McCain (former warden of RLCC),[1] and the Louisiana Department of Public Safety and Corrections ("LaDPSC"). ECF Nos. 1, 7, 21. Meaux

---

[1] After Warden McCain's death, Warden Marcus Myers became warden of RLCC in 2020 and was substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d). ECF Nos. 20, 21.

contends that, since he has been incarcerated in the Raymond Laborde Correctional Center ("RLCC"), he has been exposed to highly carcinogenic environmental tobacco smoke ("ETS") (or second-hand smoke) caused by other inmates drying smokeless tobacco ("dip") in microwaves, then rolling and smoking it. Meaux contends the prison officials at RLCC have not enforced Louisiana's Smoke Free Air Act, La. R.S. 40:1291.11(B)(14), which prohibits smoking in any state, local, or private correctional facility.[2]

Meaux seeks: (1) a TRO to stop the sale of smokeless tobacco in state prisons; (2) an order to enforce the Louisiana Smoke-Free Air Act in all state correctional facilities; (3) a jury trial; (4) damages, including punitive damages; and (5) costs.

Meaux's claims against the LaDPSC and Shelly Desselle have already been dismissed with prejudice. ECF No. 11. Meaux's claim for monetary damages against James LeBlanc in his official capacity was also dismissed with prejudice. ECF No. 11. And Meaux's claim for monetary damages against Warden Myers was dismissed as well. ECF No. 32.

Defendants Myers and LeBlanc answered the Complaints. ECF Nos. 33, 34. Defendants filed a Motion for Summary Judgment, supported by exhibits and affidavits. ECF No. 40. Meaux has not opposed that Motion.

---

[2] Louisiana enacted the Louisiana Smoke Free Air Act (2007), 2006 La. Acts No. 815, in La. R.S. 40:1291.2, et seq., which prohibits smoking in all public places. Effective August 15, 2009, the Act also prohibits smoking in any state, local, or private correctional facility. *See* La. R.S. 40:1291.11(B)(14).

2

II.   Law and Analysis

    A.   The Supreme Court's test to determine whether an inmate is entitled to relief for exposure to ETS in prison.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment" on convicted inmates during imprisonment. The Eighth Amendment encompasses a right to "reasonable safety," including protection against unsafe conditions that pose "an unreasonable risk of serious damage to [the inmate's] future health." *See Helling v. McKinney,* 509 U.S. 25, 33, 35 (1993); *see also Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016), cert. den., 137 S. Ct. 489 (U.S. 2016). A prison official's duty to protect against such unsafe conditions arises where the inmate has been placed "under a regime that incapacitates [him] to exercise ordinary responsibility for his own welfare." *County of Sacramento v. Lewis,* 523 U.S. 833, 851 (1998*); see also Legate*, 822 F.3d at 210.

In *Helling,* 509 U.S. at 34, the United States Supreme Court held the Eighth Amendment protects against imminent dangers as well as current unnecessary and wanton infliction of pain and suffering. *See also Legate*, 822 F.3d at, 210. Therefore, in certain circumstances, prison officials may violate the Eighth Amendment's prohibition against cruel and unusual punishment by exposing inmates to ETS. *See Helling,* 509 U.S. at 33-35.

"To prove an Eighth Amendment claim for unconstitutional prison conditions, an inmate must show that he was exposed to an objective risk of serious harm and

3

that prison officials subjectively acted with deliberate indifference to inmate health or safety." *See Valentine v. Collier*, 141 S. Ct. 57 (U.S. 2020) (citing *Farmer* v. *Brennan*, 511 U.S. 825, 834 (1994)).

For the objective component of the burden of proof, a plaintiff must show that he is being exposed to unreasonably high levels of ETS. The objective factor not only embraces the scientific and statistical inquiry into the harm caused by ETS,[3] but also whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. *See Hicks v. Correctional Corp. of America*, 2009 WL 2969768, at *5 (W.D. La. 2009).

As to the subjective component, deliberate indifference is a "state of mind" equivalent to "recklessly disregarding" a known and substantial risk. *See Valentine*, 141 S. Ct. at 60 (citing *Farmer*, 511 U.S. at 835-36). The Supreme Court had defined "deliberate indifference" as "subjective recklessness," or a conscious disregard of a substantial risk of serious harm. *See Farmer*, 511 U.S. at 839. Thus, prison officials may not "ignore a condition of confinement that is sure or very likely to cause serious

---

[3] It is well-established that ETS is dangerous. Courts in this district have given judicial notice to the Surgeon General's 2006 report, "The Health Consequences of Involuntary Exposure to Tobacco Smoke," which concludes there is no risk-free level of exposure to ETS. *See Davis v. McCain*, 2018 WL 4936566, at *4 (W.D. La. 2018), report and recommendation adopted, 2018 WL 4925676 (W.D. La. 2018); *Tilmon v. Keith*, 2016 WL 6662470, *1 (W.D. La. 2016); *Samuels v. Terrell*, 2015 WL 4092868, *5 (W.D. La. 2015); *Samuels v. Arnold*, 2014 WL 1340064, *3 (W.D. La. 2014); *Williams v. Johnson*, 2014 WL 2155211, *4 (W.D. La. 2016).

illness and needless suffering." *Valentine*, 141 S. Ct. at 60 (citing *Helling,* 509 U.S. at 33).

### B. Defendants were not deliberately indifferent to the serious risk of future harm to Meaux from exposure to second-hand smoke.

Meaux claims that Defendants are not enforcing the Louisiana Clean Air Act smoking ban at RLCC, which causes a serious risk to his health. He contends Warden McCain refused to enforce the smoking ban. And he maintains that inmates are allowed to dry smokeless tobacco in the microwaves and smoke it indoors.

Defendants respond that contend they have not been deliberately indifferent to the risk of harm to Meaux's health from second-hand smoke because RLCC adopted a policy against smoking. Defendants have made a continued, concerted effort to enforce that policy.

In their Statement of Undisputed Facts and an affidavit by Secretary LeBlanc, Defendants contend that Secretary Leblanc personally promulgated directives that prohibit employees and inmates from smoking tobacco in all state prisons, and is personally aware that Warden Myers has disseminated and posted those policies to all employees and inmates at RLCC. ECF No. 40-1 at 2-3; No. 40-3; NO. 40-5. Secretary Leblanc further states that he authorized Warden Myers to implement stringent measures to enforce the smoking ban at RLCC. ECF No. 40-3. Secretary LeBlanc continues to evaluate issues related to second-hand smoke in state prisons and the methods used to enforce the smoking ban. ECF No. 40-1 at 3; No. 40-3.

In an affidavit by Warden Myers, Defendants also show that Warden Myers works with Secretary Leblanc to publish, post, and disseminate the no-smoking policies among RLCC employees and inmates. ECF No. 40-1 at 3; No. 40-4. Warden Myers has been authorized and has implemented steps to ensure enforcement of the no-smoking policies at RLCC, including: (1) closure of offender day-rooms when smoking takes place in them; (2) removal of microwaves from offender dormitories when they have been used to dry smokeless tobacco; (3) offering a smoking-cessation program[4]; (4) offering smoking cessation literature; and (5) discipline of offenders caught violating the smoking ban with loss of phone privileges, canteen privileges, and yard privileges, and administrative segregation. ECF No. 40-1 at 4; No. 40-4. Defendants show that, since 2017, more than 900 disciplinary reports have been issued to inmates for violations of the no-smoking policy.[5] ECF No. 40-1 at 4; No. 40-4. Warden Myers reports to Secretary Leblanc about his efforts to enforce the smoking ban at RLCC. ECF No. 40-1 at 5; 40-4.

Defendants also submitted the RLCC smoking policy for offenders (ECF No. 40-5; No. 40-6); pictures of the posted policies at RLCC; pictures of the "no smoking" signs painted on the walls at RLCC; a picture of the agenda or minutes from a "dorm rep meeting" concerning the shutting down of TV rooms when inmates are caught

---

[4] Defendants show the smoking-cessation program was discontinued due to lack of interest. ECF No. 40-1 at 4.

[5] The disciplinary reports prior to 2017 have been destroyed pursuant to RLCC's document retention policy. ECF No. 40-1 at 4.

6

smoking or cigarette butts are found in them; and smoking cessation literature. ECF Nos. 40-6, 40-7, 40-8. Defendants also submitted approximately 850 disciplinary reports issued to inmates who violated the smoking ban, from January 2017 through August 2022. ECF Nos. 40-10, 40-11, 40-12, 40-13, 40-14, 40-15. Those reports show that Defendants are aware of the smoking problem at RLCC, and have made significant efforts to enforce the smoking ban.

In sum, Defendant have offered uncontroverted evidence of their efforts to stop inmates from smoking at RLCC, to punish inmates for doing so, and to enforce Louisiana law in this regard. Thus, Defendants have not been deliberately indifferent to any serious risk of harm to Meaux. Because Meaux has not offered any evidence to show otherwise, there are no genuine issues of material fact on the issue of deliberate indifference. Therefore, summary judgment is warranted.

I. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment (ECF No. 40) be GRANTED and that Meaux's action be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such

as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers at Alexandria, Louisiana on this 5th day of January 2023.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge